Case 2:22-cv-00047-SRW   Document 1-1   Filed 01/25/22   Page 1 of 15

ELECTRONICALLY FILED
1/4/2022 11:46 AM
03-CV-2022-900009.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
GINA J. ISHMAN, CLERK

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | |
|---|---|
| SHA'OLA TERRELL, an Individual; | ) <br> ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    CIVIL ACTION NO. <br> )    _____ <br> ) |
| ALABAMA STATE UNIVERSITY, | ) <br> )    JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Sha'ola Terrell (hereinafter "Plaintiff"), by and through the undersigned, and hereby files this lawsuit against Alabama State University (hereinafter "Defendant") pursuant to The Equal Pay Act ("EPA"), 29 U.S.C. Section 206(d) and the Clarke Figures Equal Pay Act ("CFEPA").

### NATURE OF ACTION

Plaintiff brings this action to redress grievances resulting from acts of Defendant, its agents, servants, board members, and employees with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a policy and practice of discriminating against the Plaintiff and other persons similarly situated on account of gender. The Complaint describes Defendant's unlawful employment practices and acts of intentional discrimination

1

which took place during the Plaintiff's employment. Plaintiff seeks injunctive relief and along with monetary relief, consisting of, but not limited to, compensatory and punitive damages, attorneys' fees and costs.

## PARTIES

1. Plaintiff Sha'ola Terrell (hereinafter "Terrell") is an adult who resides in the state of Alabama.

2. Defendant Alabama State University ("ASU") is located in Montgomery, Alabama and is the site where the Plaintiff worked and the events forming the subject of this lawsuit took place. ASU was the employer of the Plaintiff during all relevant times within the meaning of EPA and CFEPA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the CFEPA. Venue is proper in this Court as the events forming the basis of this lawsuit took place in Montgomery.

## STATEMENT OF FACTS

4. The Plaintiff is a female who was previously employed by the Defendant in their Athletic Department. She served the position of Sr. Associate Athletic Director with SWA designation.

5. Prior to joining ASU in October 2018, the Plaintiff had years of experience at both ASU and Troy University in their athletics department along with

years of managerial experience. The Plaintiff holds a master's degree in Sport Management Administration from Troy University. She earned a 3.9 G.P.A. for her graduate degree, also from Troy University, where she played and lettered in women's basketball.

6.  The Plaintiff was highly qualified and successful performing roles that have historically been held by males. Despite performing the same duties as males in the same position, or similarly situated positions, the Plaintiff, a female, was not paid the same as her male counter-parts. In fact, the Plaintiff held the SWA designation which was given to a woman. The designation carried with it additional responsibilities which Plaintiff fulfilled. Defendant refused to pay Plaintiff the SWA stipend of $15,000 she was entitled. Not only did they refuse to pay Plaintiff this female designated stipend they also refused to pay Jennifer Williams the same when she held the designation.

7.  The Plaintiff's job responsibilities included but was not limited to:

**Internal Operations**

Summary: Provided oversight of all internal units which included: Compliance, Academics, Equipment, Business &Finance, Strength & Conditioning, Operations, Sports Medicine, Human Resources

Note: Because of the structure the executive staff and the difference in Internal/External Units that needed management, the Athletic Director

assigned HR & Sports Medicine daily duties to the Deputy Director with Plaintiff assisting where needed. (8 internal units vs. 3 external units).

**Compliance**: ASU was on probation for multiple violations upon Plaintiff's arrival. The Plaintiff worked diligently and successfully got the probation sanction lifted and restored the institution to its full NCAA membership rights and privileges. A task that should've been completed years prior to her arrival. Upon her arrival, there were only two staff members in the compliance area with only one being full-time. Once they departed from the institution, Plaintiff was the only one remaining for a period of time. Because of its importance, Plaintiff revamped the unit, wanting to make it as strong and efficient as possible. In addition, ASU was on probation prior to Plaintiff's arrival and part of the conditions that were sanctioned by the NCAA was that the institution needed two to three full time employees within that unit. Plaintiff hired a compliance coordinator, Assistant Athletic Director of Compliance and Compliance Intern to satisfy the sanctions and provided quality coverage of the unit.

**Academics Services**

Personnel changes took place in this unit as well, which left one staff member. Because of ASU's history with academic issues, it was important to Plaintiff and A.D. Williams to have a full staff within this unit as well. Plaintiff hired an Assistant Athletic Director of Academics, Assistant Director of Academic

4

Services and two additional full time advisors, along with a host of tutors and monitors.

## Business & Finance

There was no personnel completing business functions from a managerial perspective. In addition, there were no business procedures for the department to conduct daily business. Plaintiff created and implemented all business processes to ensure accurate record keeping, accountability and strategic planning to ensure the department was operating within the limits of the budget. Plaintiff served as the liaison to all cross- campus business departments.

## Equipment

Plaintiff hired an equipment coordinator for the department as there was only one equipment manager, assigned specifically for one sport. This left the other seventeen sports without assistance. In addition, Plaintiff created processes both internally and externally to ensure a smooth workflow of business practices. Also, Plaintiff managed all aspects of the Department's contract with its' equipment providers, Adidas and its subsidiaries vendors which included, contract negotiations, product updates, shipping and receiving procedures, regional & national meetings, etc.

**Strength & Conditioning**

Plaintiff expanded the roster of staff from two full time staff members to three full time with interns. In addition, the unit functioned as a support unit of one program, but its intent is to provide services to all eighteen programs. With the revision of the unit's duties and reporting structure, all eighteen programs began getting service from the Strength & Conditioning unit.

**Senior Woman Administrator**

Plaintiff served as the SWA of the department from October 2018 until her separation from the institution. The designation was to be accompanied with a $15k annual stipend for performing the duties. Plaintiff performed all SWA duties and beyond which included but was not limited to: attendance all conference and NCAA meetings, conferences and events, completed all conference and NCAA reports, attended conference championships as a conference SWA liaison, served on conference committees to further grow the membership, created student-athlete development program within the department, created mental health outlets for all student-athletes, served as title IX advocate for all student athletes, created gender equity plans for both staff and student-athletes in support of the overall strategic plan for the department.

**Executive Staff Member**

Plaintiff provided direct supervision for 8 of the 18 programs within the department. She assisted with securing financial donors, negotiated game contracts, made public appearances on behalf of the Athletic Director, acted as a liaison to various external partners, provided recommendations to the Athletic Director on all aspects of the department. She also completed other various duties as assigned.

8. The work environment at ASU was ridiculed with inappropriate comments and behaviors by male trustees regarding females, including but not limited to: males were paid more for less responsibility; a male trustee banged on tables in front of Plaintiff and other female staff as a show of authority and dominance over the females while another male trustee allowed the conduct to occur and continue; male trustee commented that females in the Athletic Department need to wear more revealing clothing to get more money raised, and other derogatory and offensive comments.

9. Another male within the Athletic Department who served a similar position, was paid more than Plaintiff despite having Plaintiff having more responsibilities. Both were Associate Athletic Director positions.

10. Despite her success, experience, workloads, Plaintiff was paid less than ASU male employees who performed the same, or substantially the same work in similar positions requiring similar skill, effort, responsibility and education.

11. For instance, the current Athletic Director, a male, is paid more than the previous female (Jennifer Williams) yet lacks her success, education and qualifications. The current Athletic Director is paid an estimated $170,000 while the Plaintiff was paid $135,000. Ms. Williams also held the SWA designation but ASU again refused to pay Williams the stipend that is due by virtue of the designation.

12. Defendant has a pattern and practice of paying females less than their male counterparts. Based on information and belief, other examples of gender inequality in pay by the Defendant include but are not limited to: Wanda Smith (female CFO) was paid $135,000 while the male CFO, Bill Hopper, is paid $175,000; former VP of Student Affairs DaVida Haywood received $135,000 while her male counterpart Derrick Brewster was paid significantly more; President Boyd was paid $25,000 less than her predecessor Joseph Silver; Assistant Vice President of Human Resources Derrick Carr was paid more than his female counterpart Willie.

13. Plaintiff suffered unequal pay and benefits in the form of front and back pay.

14. When Plaintiff complained, she faced harassment, violent outbursts by board members and others, and other retaliatory responses, which caused the

8

Plaintiff's mental anguish, loss of career opportunities, termination, worry, and emotional injury.

15. This action is brought pursuant to the EPA and CFEPA to obtain equitable and injunctive relief and to remedy Defendant's violations. As a result of these violations, Defendant has deprived Plaintiff of her lawful wages, benefits and caused Plaintiff to suffer injuries and damages.

## CAUSE OF ACTION

## COUNT ONE - VIOLATION OF EQUAL PAY ACT

16. Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

17. Plaintiff is female and a member of a protected group.

18. Plaintiff was paid lower wages than her male counterparts in violation of the Equal Pay Act of 1963. The Plaintiff has access to information which reflects she was paid less than similarly situated male employees who are performing/performed substantially the same work with the same education, skill and tenure. Defendant also refused to pay Plaintiff the $15,000 due her for maintaining her SWA designation – a female designation that put more responsibilities on the designee.

19. The basis for the disparity in wages between the Plaintiff and her male counterparts is Plaintiff's gender in violation of the Equal Pay Act of 1963.

20. This disparate treatment was caused by purposeful, willful or intentional discrimination.

21. As a proximate result of ASU's unlawful intentional discrimination, the Plaintiff suffered financial loss, economic loss, loss of employment, shame, humiliation, emotional distress, trauma, worry, anxiety, and other damages.

22. Plaintiff seeks declaratory and injunctive relief, award of lost employment and career benefits and wages, back and front pay, interest, compensatory damages for loss of career opportunity, humiliation, embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact may assess.

23. At all times relevant to this action, Defendant was the "employer" of Plaintiff as defined by the Equal Pay Act of 1963.

24. At all times material to this action, Plaintiff was an "employee" of Defendant as defined by the Equal Pay Act of 1963, and they worked for Defendant within the United States within appropriate years preceding the filing of this lawsuit.

25. Defendant has a pattern and practice of paying females less than their male counterparts. Other examples of gender inequality in pay by the Defendant includes but is not limited to: Wanda Smith (female CFO) was paid $135,000 while the male CFO, Bill Hopper, is paid $175,000; former VP of Student Affairs DaVida Haywood received $135,000 while her male counterpart Derrick Brewster was paid

significantly more; President Boyd was paid $25,000 less than her predecessor Joseph Silver; Assistant Vice President of Human Resources Derrick Carr was paid more than his female counterpart Willie.

## COUNT TWO- VIOLATION OF THE CLARKE-FIGURES EQUAL PAY ACT

26. Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

27. Plaintiff is female and a member of a protected group.

28. Plaintiff was paid lower wages than her male counterparts in violation of the Clarke Figures Equal Pay Act. The Plaintiff has access to information which reflects she was paid less than similarly situated male employees who are performing/performed substantially the same work with the same education, skill and tenure.

29. The basis for the disparity in wages between the Plaintiff and her male counterparts is Plaintiff's gender in violation of the Clarke Figures Equal Pay Act.

30. This disparate treatment was caused by purposeful, willful or intentional discrimination.

31. As a proximate result of ASU's unlawful intentional discrimination, the Plaintiff has suffered financial loss, economic loss, loss of employment, shame, humiliation, emotional distress, trauma, worry, anxiety, and other damages.

32. Plaintiff seeks declaratory and injunctive relief, award of lost employment and career benefits and wages, back and front pay, interest, compensatory damages for loss of career opportunity, humiliation, embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact may assess.

33. At all times relevant to this action, Defendant was the "employer" of Plaintiff as defined by the Clarke Figures Equal Pay Act.

34. At all times material to this action, Plaintiff was an "employee" of Defendant as defined by the Clarke Figures Equal Pay Act, and she worked for Defendant within Alabama within appropriate years preceding the filing of this lawsuit.

35. Defendant has a pattern and practice of paying females less than their male counterparts. Other examples of gender inequality in pay by the Defendant includes but is not limited to: Wanda Smith (female CFO) was paid $135,000 while the male CFO, Bill Hopper, is paid $175,000; former VP of Student Affairs DaVida Haywood received $135,000 while her male counterpart Derrick Brewster was paid significantly more; President Boyd was paid $25,000 less than her predecessor Joseph Silver; Assistant Vice President of Human Resources Derrick Carr was paid more than his female counterpart Willie.

## **COUNT THREE- RETALIATION**

36. Plaintiff adopts all preceding paragraphs of this Complaint as if fully set forth herein.

37. As a result of Plaintiff's vocalization about the work environment, poor business practices, retaliatory culture, harassment and pay disparities, Plaintiff was terminated.

38. The termination violated the Equal Pay Act and the Clarke Figures Equal Pay Act which specifically prohibit retaliation in response to reporting.

39. Plaintiff has suffered embarrassment, economic damages, damage to reputation, emotional distress, anxiety, worry and loss of access to other positions and promotion, damage to reputation, and other damages.

40. Plaintiff seeks any and all damages she may be entitled under these present circumstances.

**WHEREFORE**, Plaintiffs pray for the following relief:

A. Grant a permanent injunction enjoining Defendant, its officers, board members, trustees, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment.

B. Order Defendant to institute and carry out policies, practices and programs which provide equal provisions and employment

opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against discrimination;

C. Order Defendant to make Plaintiff whole by providing appropriate affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, compensatory and punitive damages;

D. Award Plaintiff their costs and expenses herein, including a reasonable attorney fee; and

E. Award such other and further relief which this Court deems necessary and proper.

Respectfully submitted on this the 4th day of January 2022.

/s/ Jamie A. Johnston

Jamie A. Johnston
Attorney for Plaintiff

**OF COUNSEL:**

Jamie A. Johnston, P.C.
509 Cloverdale Road, Suite 101
Montgomery, Alabama 36106
334.202.9228
334.265.8789 – facsimile
jamie@jjohnstonpc.com

**MAILING ADDRESS:**
PO Box 4663
Montgomery, Alabama 36103

## JURY TRIAL DEMANDED

A jury demand is hereby made for all claims.

*/s/ Jamie A. Johnston*

Jamie A. Johnston