IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHA'OLA TERRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-47-RAH |
| | ) | [WO] |
| ALABAMA STATE UNIVERSITY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Sha'ola Terrell sues Defendants Alabama State University and the Board of Trustees of Alabama State University (collectively, "ASU") for wage discrimination and retaliation under the Equal Pay Act, 29 U.S.C. § 206(d), and the Clarke Figures Equal Pay Act, Ala. Code § 25-1-30, as well as for sex discrimination under Title IX, 20 U.S.C. § 1681. The Defendants have moved for summary judgment on all claims against them. Upon review of the record, briefs, and applicable law, the Court concludes that the Defendants' motion is due to be granted.

## II. JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a). The parties do not contest personal jurisdiction or

venue, and the Court finds adequate allegations to support both. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that a genuine dispute of material fact exists, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences from that evidence in favor of the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020).

## IV. BACKGROUND

In July 2018, ASU sought to fill the position of Senior Associate Athletic Director for Internal Operations. (Doc. 23-1.) It budgeted and advertised a

maximum annual salary of $75,000 for the position. (Doc. 23-21.) According to the vacancy announcement, the position reported to the Director of Intercollegiate Athletics, supervised the Director of Compliance, Compliance Coordinator and other support staff, and assisted with supervising head coaches for assigned sports. (*Id.*)

Then-ASU Athletic Director Jennifer Williams contacted Plaintiff Sha'ola Terrell about her interest in the position. (Doc. 23-3 at 8.) Terrell voiced her interest, and was later interviewed and offered the position. (*Id.* at 9.) Terrell accepted the offer and began work on October 1, 2018, earning an annual salary of $75,000, as had been advertised. (Doc. 23-5.)

From 2018 until she was terminated, Terrell also served as the Senior Woman Administrator (SWA) for ASU's athletic department (Doc. 23-3 at 22), a National Collegiate Athletic Association (NCAA) designation that individual colleges or universities may use "to promote meaningful representation of women in the leadership and management of college sports," (Doc. 27-7 at 1). Serving in this role required her to attend various athletic conference and NCAA meetings, conferences, and events, complete reports, serve on conference committees, and create development and equity programing and plans. (Doc. 25-1 at 7–8.) Terrell received no additional compensation for the SWA designation or the duties and

responsibilities that came with it, although ASU had budgeted $15,000 for the designation.  (Doc. 23-3 at 22; Doc. 25-2.)

In May 2021, Williams resigned effective July 16, 2021.  (Doc. 23-8).  ASU then hired Dr. Jason Cable as Athletic Director effective August 16, 2021.  (Doc. 23-9; Doc. 23-10).  Once aboard, Dr. Cable restructured the athletics department (Doc. 23-10), resulting in the elimination of Terrell's position in September 2021 and the distribution of Terrell's duties to other positions (Doc. 27-6 at 4–6), revision of the duties of the Deputy Athletic Director position held by Terrance Jones, and the creation of a new position titled "Senior Associate Athletic Director/Chief of Staff," (Doc. 23-10; Doc. 23-11; Doc. 27-5 at 1).  ASU hired Jacqueline Freeman-Johnson (a female who previously reported to Terrell) to fill the new Senior Associate Athletic Director/Chief of Staff role.  (Doc. 25-23.)

Terrell then filed this suit.  In her Second Amended Complaint, she brings claims for wage discrimination on the basis of sex under the Equal Pay Act (EPA) (Count 1), 29 U.S.C. § 206(d), and the Clarke Figures Equal Pay Act (CFEPA) (Count II) Ala. Code § 25-1-30; for retaliation (Count III) in violation of the anti-retaliation provision of the Equal Pay Act; and for sex discrimination (Count IV) under Title IX, 20 U.S.C. § 1681.  The Defendants move for summary judgment on all claims.

4

## V. DISCUSSION

### A. Wage Discrimination Claims

Terrell claims the Defendants violated the EPA and the CFEPA by paying her less than her male co-workers for equal or greater work.

The EPA and the CFEPA generally prohibit employers from paying employees different rates on the basis of sex for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system that measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. 29 U.S.C. § 206(d)(1); Ala. Code § 25-1-30(b)(4). Since the relevant provisions of the EPA and the CFEPA are nearly identical, the Court's analysis of Terrell's EPA claim equally applies to her CFEPA claim. *See Williams v. Ala. State Univ.*, No. 2:22-cv-48-ECM, 2023 WL 4632386, at *3 (M.D. Ala. July 19, 2023).

Courts use a burden-shifting framework to analyze EPA claims. *Blackman v. Fla. Dep't of Bus. & Prof'l Regul.*, 599 F. App'x 907, 909 (11th Cir. 2015) (per curiam); *Steger v. General Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003). To prevail on her wage discrimination claims, Terrell must establish a *prima facie* case by showing ASU paid her less than it paid men for equal work on jobs the performance of which requires equal skill, effort and responsibility, and that are

performed under similar working conditions.  29 U.S.C. § 206(d)(1); *Smith v. Florida A&M Univ. Bd. of Trustees*, 831 F. App'x 434, 439 (11th Cir. 2020) (per curiam).  "A plaintiff therefore fails to make a *prima facie* case of unequal pay if the job responsibilities of her alleged comparator were greater than her own."  *Lima v. Fla. Dept. of Children and Families*, 627 F. App'x 782, 786 (11th Cir. 2015) (per curiam) (citing *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799–800 (11th Cir. 1989).  And "[a]lthough job titles are given some weight in the analysis, they are not dispositive." *Id.* (citing *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir. 1994)).

The initial burden to demonstrate comparability is "fairly strict," and although the jobs compared need not be identical, a plaintiff must demonstrate "that she performed substantially similar work for less pay."  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992); *Blackman*, 599 F. App'x at 909.  *See also Waters*, 874 F.2d at 799 ("The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.").  The primary focus is on the duties of each job, not on the individual employees holding those jobs. *See Miranda*, 975 F.2d at 1533 (explaining that "the controlling factor under the Equal Pay Act is job content" (citation omitted)).  *See also Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998) ("[T]he controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content.").

Because a *prima facie* case does not require a showing of an employer's discriminatory intent, the EPA "prescribes a form of strict liability." *Miranda*, 975 F.2d at 1533.

The Defendants argue that Terrell cannot make out a prima facie case of wage discrimination because she cannot present any proper male comparators.  Terrell counters, offering four male comparators: (1) Terrance Jones, then-Deputy Director of Intercollegiate Athletics who earned $95,000; (2) Derrick Magee, then-Senior Associate Director for Business Affairs who earned $75,000; (3) Ron Brown, then-Associate Director of Athletics for Academic Compliance who reported to Terrell and earned $95,000; and (4) Lonnie Brown, who oversaw the strength and conditioning division of internal operations during Terrell's tenure, also reported to Terrell, and earned $75,000.[1]  (Doc. 24 at 10–13.)  The Defendants dispute that any of these individuals are proper comparators.

---

[1] To the extent Defendants' Motion to Strike the Affidavit of Sha'Ola Terrell (Doc. 28) seeks to strike Lonnie Brown as a comparator under the "sham affidavit" rule, the motion is due to be denied. Although Defendants argue that Terrell did not identify Brown during her deposition but later identified him in her affidavit filed in opposition to the Defendants' motion for summary judgment, Defendants did not show that the inconsistency is inherent and unexplained such that it created a "transparent sham."  *See Cooper v. Georgia Dep't of Transp.*, 837 F. App'x 657, 665 (11th Cir. 2020).  "[E]ven if an affidavit or declaration is 'self-serving,' that is not a basis for striking it." *Id.* (citing *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) (en banc) ("We hold that an affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated.")).  The addition of Lonnie Brown to the list of alleged comparators does not directly contradict Terrell's prior testimony concerning males she believed were similarly situated and, for the reasons that follow, Defendants will not be prejudiced.  The Court thus declines to strike Lonnie Brown as a comparator.

### 1.  Terrance Jones

Terrell's best alleged comparator is Terrence Jones, then-Deputy Director of Intercollegiate Athletics. (Doc.  27-3.)  Like Terrell, Jones held managerial and supervisory duties within the athletic department, but his salary was $20,000 more than Terrell's salary.

Jones's job responsibilities included assisting the Director of Intercollegiate Athletics with the overall planning, implementation, administration, direction, and supervision of the Athletic Department and providing daily operations management over the athletic programs and projects, including administrative support for coaching staff, assisting in managing the day-to-day operations of the athletics department, directly supervising administrative staff, representing the athletics department in contract negotiations, reviewing all contracts concerning the athletic department, supervising coaching staff and overseeing sport programs, representing ASU at institutional, conference, and NCAA meetings, and serving on both the internal and external committees. (Doc. 27-4.) The position also required a master's degree and at least five years of relevant intercollegiate athletics experience, "demonstrated knowledge of operations of an intercollegiate athletics program, experience in contract negotiation and review and [ability to] work a flexible schedule [including] evenings and weekends[.]" (*Id.*)

Terrell held a different position from Jones—she was the Senior Associate Athletic Director of Internal Operations.   Terrell's position reported to the Director of Intercollegiate Athletics, and she was responsible for supervising the Director of Compliance, the Compliance Coordinator, and other support staff; assisting with supervising head coaches for assigned sports; evaluating ASU's efforts to maintain institutional control of the athletic program; making appropriate recommendations to the Director and Deputy Director of Intercollegiate Athletics regarding NCAA Governance matters, as well as NCAA, Southwestern Athletic Conference and Institutional Policies and Legislation; overseeing the day-to-day operations of the compliance department, athletic academic advising, sports medicine and strength and conditioning; serving as liaison for all eligibility functions and processes including the eligibility certification process; and serving "as an athletic contact for Authorized Eligibility Signature in the office of the Deans, Registrar, and Financial Aid, and perform other duties as assigned." (Doc. 23-21.)  Like Jones's position, Terrell's position required a master's degree and at least five years of relevant intercollegiate athletics experience, demonstrated knowledge of the operation of intercollegiate athletics programs, and a flexible work schedule to include evenings and weekends.  (*Id.*)

Terrell notes in her comparator analysis that she also served as ASU's Senior Woman Administrator, a role for which ASU had budgeted $15,000 but for which

she received no compensation, and that this role added to her duties and responsibilities. In other words, according to Terrell, she earned less than Jones for performing far more duties and responsibilities.

ASU argues that Jones is not a proper comparator because Terrell and Jones held different positions, did not perform substantially similar work, and Terrell did not provide evidence showing the two positions required equal skill, effort, and responsibility. The Court agrees. Considering the job content between the two positions, and the "fairly strict" burden Terrell must meet to make out a *prima facie* case, she has not met the "heavy burden of 'proving substantial identity of job functions'" between her and Jones. *Waters*, 874 F.2d at 799 (citation omitted).

It is true that ASU paid Jones more than Terrell, both supervised several people, represented ASU's athletic department, and engaged in managerial and supervisory responsibilities within the athletic department, but "[b]road similarities between a small percentage of [the comparator]'s job and Plaintiff's job . . . are inadequate." *Fail v. Univ. of Ala. Ophthalmology Serv. Found.*, No. 2:16-cv-01393, 2018 WL 3495862, at *6 (N.D. Ala. July 20, 2018). *See also Rollins v. Alabama Cmty. Coll. Sys.,* 814 F. Supp. 2d 1250, 1315 (M.D. Ala. 2011) (holding plaintiff cannot establish prima facie case simply based on general similarities in position); *Byrd v. Auburn Univ. at Montgomery*, No. 2:05-cv-835-CSC, 2007 WL 1140424, at *9 (M.D. Ala. Apr. 17, 2007) (no prima facie case for EPA claim based

on overlapping management tasks where primary duties of position were different). But viewing the position descriptions side by side, the Deputy Director of Intercollegiate Athletics held much broader and different managerial and supervisory responsibilities from the Senior Associate Athletic Director of Internal Operations. Terrell makes little argument comparing the two jobs beyond identifying their broad similarities. In other words, she has not sufficiently shown her position required equal skill, effort, and responsibility to perform.

She instead primarily argues that Jones is a proper comparator because Jones received more compensation despite the fact that Terrell took on additional responsibilities—those additional responsibilities are not apparent in Terrell's argument or the record—and that ASU should have paid her the budgeted compensation for the SWA designation. The Court fails to understand how the SWA designation makes Jones a proper comparator since no evidence has been presented showing that Jones ever served as the SWA or with a similar designation, or that if he did, he was compensated for it. If anything, Terrell's role as the SWA only further distances Jones as a proper comparator.

Accordingly, Jones is not a sufficient comparator for purposes of making a *prima facie* case of wage discrimination.

### 2.  The remaining comparators

Terrell's remaining comparators are Lonnie Brown, Ron Brown and Derrick McGhee.  Upon examination of the evidence concerning these three individuals, none of them are proper comparators.

First, by Terrell's own admission, Lonnie Brown was paid $75,000 annually (the same as Terrell), reported to Terrell, and "had far less work and responsibilities" than Terrell.  (Doc. 25-1 at 12.)  Thus, Terrell has not shown that ASU paid Lonnie Brown more for equal work, and she has conceded their respective jobs did not require equal skill, effort, and responsibility under similar working conditions. That Lonnie Brown worked less for the same pay as Terrell does not mean that ASU paid Brown more money for equal work nor does it make him an appropriate comparator. *See Blackman*, 599 F. App'x at 910 (concluding that a male was not an appropriate comparator for a female plaintiff because of dissimilarity in job responsibilities, even though the male comparator was her subordinate, was paid more, and worked less). Accordingly, Lonnie Brown is not an appropriate comparator.

According to Terrell, Rob Brown also reported to her and "had far less work and responsibilities" than she did.  (Doc. 25-1 at 12.)  ASU did pay Brown more than Terrell, which ASU argues was an accounting error (Doc. 23-19), but Terrell again conceded their respective jobs did not require equal skill, effort, and

responsibility under similar working conditions. Rob Brown is therefore not an appropriate comparator.

Finally, Terrell says Derrick Magee earned $75,000 annually and "had far less responsibilities than [her] position" while she "had significantly more responsibilities" compared to Magee. (Doc. 25-1 at 12–13.) Here again, Terrell has not shown that ASU paid Magee more for equal work, and she concedes that their jobs did not require equal skill, effort, and responsibility under similar working conditions. Magee too is not an appropriate comparator.

Having failed to raise a genuine dispute of material fact as to whether her job responsibilities were substantially similar to her alleged male comparators, Terrell has not made out a *prima facie* case of wage discrimination on the basis of sex. Therefore, ASU's motion for summary judgment on her EPA and CFEPA claims is due to be granted.

## B. Retaliation

Terrell also claims that ASU retaliated against her in violation of the anti-retaliation provision of the EPA by terminating her soon after she complained about her compensation. ASU argues Terrell cannot establish a *prima facie* case of retaliation, and, alternatively, that it had legitimate, non-retaliatory reasons for her termination.

### 1. Terrell's *prima facie* case

"The anti-retaliation provision of the Equal Pay Act, as incorporated into the FLSA, makes it unlawful for an employer to discharge or otherwise retaliate against an employee for filing a complaint or instituting proceedings related to the FLSA." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018) (citing 29 U.S.C. § 215(a)(3)). To establish a *prima facie* case of retaliation, Terrell must show that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) the adverse action was causally related to her protected activity. *Hornsby-Culpepper*, 906 F.3d at 1314 n.9 (quoting *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000)).

There is no dispute that Terrell suffered an adverse action when she lost her job. Instead, ASU argues Terrell did not engage in protected activity because she did not make a complaint or institute proceedings about her wages and further that the loss of her job was unrelated to any alleged protected activity.

"To fall within the scope of the antiretaliation provision [of Section 215(a)(3)], a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones." *Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1, 14 (2011).

Terrell contends she engaged in protected activity when she complained to ASU officials—Dr. Cable, Jennifer Williams and Dr. Kevin Rolle—about not receiving equal wages and not receiving compensation for her role as SWA. In her deposition, Terrell testified that she "made [her] direct supervisor, Mrs. Williams, aware" of "the lack of equal pay" and when Williams left ASU, Terrell said she "complained to whom [she] thought was the next in the chain of command," Dr. Kevin Rolle, Chief of Staff to the ASU president. (Doc. 23-3 at 27.) Terrell claims she made verbal complaints to superiors and that she sent a memo to Dr. Cable. (Doc. 23-3 at 27; Doc. 25-1 at 16). No party, however, has produced that memo and no one corroborated Terrell's statements that she made verbal complaints concerning wage discrimination. But viewing this evidence in the light favorable to Terrell, the Court concludes that she has presented sufficient evidence that she engaged in protected activity.

Having cleared that hurdle, Terrell must also present evidence of causation; that is, that her termination was causally related to her protected activity. The causal link element of Terrell's *prima facie* case "merely [requires Terrell] to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). "[A] plaintiff satisfies this element if [s]he provides sufficient evidence that the decision-

maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse . . . action." *Shotz v. City of Plantation,* 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (quoting *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999). Mere temporal proximity, without more, must be "very close." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001). One month, for example, between the protected activity and adverse action is sufficient to infer causation based solely on temporal proximity, but a three-month interval is not. *Faircloth v. Herkel Invs., Inc.*, 514 F. App'x 848, 852 (11th Cir. 2013) (citing *Wideman v. Wal–Mart Stores,* 141 F.3d 1453, 1457 (11th Cir. 1998) (one-month period sufficient); *Thomas v. Cooper Lighting,* 506 F.3d 1361, 1364 (11th Cir. 2007) (three-month period insufficient)).

Terrell claims she made verbal complaints to Jennifer Williams on unspecified dates, sent a written memo to Dr. Cable complaining about not receiving pay for the SWA designation, and then was fired within days after sending the memo. While ASU contests Terrell's testimony on these subjects, disputes of fact nevertheless exist concerning whether and when Terrell had these conversations, whether and when she sent such a memo, and the temporal proximity between the dates of these communications, including the memo, and her termination. As such, ASU has not shown its entitlement to summary judgment due to Terrell's inability to make out her *prima facie* case of retaliation.

## 2. Pretext

Now "the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Calvert v. Doe*, 648 F. App'x 925, 929 (11th Cir. 2016) (citing *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)).  ASU has met its low burden here by showing that Terrell was terminated because of athletic department restructuring under Dr. Cable's new leadership.  (Doc. 27-5.)

The burden therefore shifts back to Terrell who "must demonstrate that the proffered reason was merely a pretext to mask retaliatory actions."  *Calvert*, 648 F. App'x at 929.  "Significantly, when it comes to retaliation claims, a plaintiff must demonstrate that [her] participation in protected activity was the 'but-for' cause of the adverse employment action."  *Bailey v. Metro Ambulance Serv.*, 992 F.3d 1265, 1277 (11th Cir. 2021) (per curiam) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

Terrell argues ASU's stated legitimate reason for her termination—restructuring—was pretext for retaliation because her position as Senior Associate Athletic Director for Internal Operations was never, as ASU argues, actually eliminated during department restructuring; rather, the position and responsibilities remained the same and ASU simply hired someone else who had previously reported to Terrell.  In his Affidavit, Dr. Cable testified that after his appointment, he "started

to plan for the restructuring of the Department of Athletics" which "included the elimination of the Senior Associate Athletic Director of Internal Operations and a revision of the duties for the Deputy Athletic Director." (Doc. 23-10 at 1.) According to Dr. Cable, the "restructuring was in the form of creating a combined position of Senior Associate Athletic Director/Chief of Staff" position. (Doc. 27-5 at 1.) Dr. Cable's "only reason for recommending the non-reappointment of Terrell" was "so that the new positions could be created, posted and filled based upon [his] needs for the department." (Doc. 23-10 at 1–2.)

Terrell has not provided sufficient evidence to show that ASU's reason was pretextual, nor has she shown that her complaints were the but-for cause of her termination. Beyond conclusory allegations, Terrell has not provided any evidence sufficient to support her argument that ASU did not eliminate the position of Senior Associate Athletic Director of Internal Operations or that her role was filled by a male. To the contrary, the evidence shows that the position was eliminated, the position's responsibilities were distributed among other positions, and a new position was created. (Doc. 27-6 at 4–6.) At best, Terrell is simply quarrelling with the wisdom of Dr. Cable's restructuring decisions, and, in particular, that another employee (a former subordinate who was female) was chosen for the new position, and not her. As has been noted, the "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as

long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc). Terrell did not raise a genuine dispute of material fact as to pretext and therefore ASU's motion for summary judgment on Terrell's retaliation claim is due to be granted.

## C. Title IX

Terrell next claims ASU violated Title IX by discriminating against her on the basis of sex. Title IX was passed as part of the Education Amendments of 1972 and "patterned after" the Civil Rights Act of 1964. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694–96 (1979). Subject to certain exceptions, the statute mandates: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX's purpose "is to prohibit sex discrimination in education." *Adams by and through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 811 (11th Cir. 2022) (en banc).

Alabama district courts, including this one, have previously applied Title VII's analytical framework to Title IX employment discrimination claims. *See Williams*, 2023 WL 4632386, at *8. *See also Sadeghian v. Univ. of S. Ala.*, No. 18-00009-JB-B, 2018 WL 7106981, at *13 (S.D. Ala. Dec. 4, 2018). Accordingly, the Court will

also apply "Title VII's substantive standards for proving discriminatory treatment under Title IX." *Grandison v. Ala. State Univ.*, No. 2:20-cv-483-WKW, 2022 WL 418689, at *5 (M.D. Ala. Feb. 10, 2022).

A plaintiff may prove discrimination under Title IX by either direct or circumstantial evidence. *Williams*, 2023 WL 4632386, at *8 (citing *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008)). A plaintiff may demonstrate circumstantial evidence of discrimination through the *McDonnell Douglas* burden-shifting framework. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Because Terrell has not offered any direct evidence of discrimination, the Court addresses her claim under *McDonnell Douglas*. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

Under this framework, an employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case. *See Lewis*, 918 F.3d at 1220–21. If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). If the employer does so, then the burden returns to the employee to prove that the employer's proffered reason is pretext for unlawful discrimination. *Crawford*, 529 F.3d at 976. At all times, the ultimate burden of persuasion remains with the plaintiff to show that the employer

20

intentionally discriminated against her. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993). "In the summary judgment context, a plaintiff need only present evidence from which a reasonable trier of fact could conclude an employer intentionally discriminated against her." *Williams*, 2023 WL 4632386, at *8.

Under *McDonnell Douglas*, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21.

ASU does not dispute that it is subject to Title IX, that Terrell is a member of a protected class, that she was qualified to perform her job, and that she was subjected to an adverse employment action. Instead, ASU argues Terrell cannot establish a *prima facie* case to support her sex discrimination claim for the same reasons she could not succeed on her wage discrimination claim—she cannot identify an appropriate comparator, nor can she show pretext. For purposes of her Title IX claim only, the Court will assume that Terrell can present an appropriate comparator, especially in light of the Eleventh Circuit's "more relaxed standard of similarity between male and female-occupied jobs" under Title VII than the EPA,

*see Miranda*, 975 F.2d at 1529 n.15, and therefore that she can establish her prima facie case.  Thus, the Court will move to the dispositive issue: pretext.

In the Title IX context, as it is under Title VII, ASU's burden to produce a legitimate, nondiscriminatory reason for its adverse employment action is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).  ASU "must merely proffer non-gender based reasons, not prove them." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (citing *Miranda*, 975 F.2d at 1529).  And here, ASU has carried its burden by showing that salaries in the ASU athletic department were budgeted and advertised prior to hiring anyone for the position and therefore those salaries were set regardless of whether the applicant was male or female.

Once an employer articulates a legitimate, nondiscriminatory reason for its decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Alvarez*, 610 F.3d at 1264.  The plaintiff "cannot succeed by simply quarreling with the wisdom of [the employer's] reason," and instead "must confront the employer's seemingly legitimate reason . . . 'head on and rebut it.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013) (citations omitted).  "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is

unworthy of credence,'" such that a rational trier of fact could disbelieve the employer's proffered nondiscriminatory reason. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine*, 450 U.S. at 256); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).

Terrell contends that ASU's proffered nondiscriminatory reason is pretext because (1) the advertised salary for some positions in the athletic department were marked "competitive" rather than identifying a specific amount, (2) that there were discrepancies between the pay employees received as compared to the amount budgeted for their position due to potential pay incentives earned in addition to their budgeted salary, (3) that hiring and salary determinations could be made outside the budgeting process by obtaining approval from ASU's Vice President for Business & Finance, and (4) that ASU budgeted $10,000 to $15,000 per year for the SWA designation but Terrell did not receive such compensation.

These assertions do not confront ASU's seemingly legitimate reason head on and rebut it. The facts Terrell identifies do not directly show ASU's stated reason was pretextual by persuading the Court that a discriminatory reason more likely motivated ASU, and nor do they do so indirectly by showing ASU's proffered reason was unworthy of credence such that a rational tier of fact could disbelieve it.

To show pretext indirectly, Terrell "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

23

proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Alvarez*, 610 F.3d at 1265 (citation omitted). *See, e.g., Tucker v. Fulton Cnty.*, 470 F. App'x 832, 835–36 (11th Cir. 2012) (per curiam) (concluding the plaintiff showed inconsistencies and contradictions sufficient to render the defendant's proffered reason unworthy of credence by producing a memorandum and email contradicting a defendant's deposition testimony and summary judgment affidavit). ASU's "reason cannot be . . . 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515.

Even viewing the facts in the light most favorable to Terrell, although she disputes that the salaries for each position were set and advertised before hiring decisions were made, the facts she presents do not show that ASU's proffered nondiscriminatory reason for her termination was false. Neither do the facts demonstrate that discrimination was ASU's real reason for her termination. In an attempt to argue ASU's discriminatory motive, Terrell resorts to the same argument that ASU paid certain male employees the same as or more than her but for less work, and that the hiring announcements and budget sheets show inconsistences in salary determinations. She spends most of her argument squabbling with ASU's budgeting and hiring process, but she devotes little argument and evidence to the position that she actually held—Senior Associate Athletic Director of Internal

Operations.  And although Terrell makes a passing reference to Ron Brown, who earned more than she did, Terrell did not present evidence tying the mere fact that Ron Brown, or Jones for that matter, made more than her to intentional discrimination, or other evidence showing that ASU's explanation for Brown's and Jones's higher salaries were false.  Instead, she primarily rests her argument again on the fact ASU did not pay her for the job responsibilities attendant to the SWA designation even though ASU had budgeted for it, and in her view, that renders ASU's proffered reason unworthy of credence.

Terrell's evidence does not demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" such that she showed pretext.  She merely squabbles with the wisdom of ASU's reasons without confronting them head on and rebutting them.  *Kidd*, 731 F.3d at 1206.  "Absent evidence that the decision was intentionally discriminatory, the Court will not quarrel with how the Defendants choose to set their employees' salaries."  *Williams*, 2023 WL 4632386, at *9 (citing *Kidd*, 731 F.3d at 1206).  *See also Bell-Haynes v. Ala. State Univ.*, 2023 WL 2534738, at *13 (M.D. Ala. Mar. 15, 2023).  And absent a showing that ASU's proffered nondiscriminatory reason was so inconsistent as to allow a "reasonable factfinder [to] find them unworthy of credence," *Alvarez*, 610 F.3d at 1265 (citation omitted), Terrell has not presented evidence giving rise to a genuine dispute of material fact as it pertains to pretext.

ASU's motion for summary judgment as to Terrell's Title IX sex discrimination claim is thus due to be granted.

## VI. CONCLUSION

Accordingly, it is ORDERED as follows:

(1)    The Defendants' Motion for Summary Judgment (Doc. 21) is **GRANTED**;

(2)    The Defendants' Motion to Strike the Affidavit of Sha'Ola Terrell (Doc. 28) is **DENIED** as moot in part and **DENIED** on the merits in part as set forth herein;

(3)    Plaintiff Sha'Ola Terrell's claims against Defendants are **DISMISSED** with prejudice;

(4)    A separate judgment will issue.

**DONE** on this the 30th day of October 2023.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE