IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHA'OLA TERRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-00047-RAH |
| ) | [WO] |
| ALABAMA STATE UNIVERSITY, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM OPINION AND ORDER**

## **INTRODUCTION**

On December 3, 2024, the Eleventh Circuit vacated[1] this Court's grant of summary judgment to Defendants on Plaintiff Sha'ola Terrell's sex discrimination claims under the Equal Pay Act (EPA), 29 U.S.C. § 206(d), and the Clarke-Figures Equal Pay Act (CFEPA), Ala. Code § 25-1-30, and remanded these two claims for further proceedings in light of the Eleventh Circuit's intervening decision in *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (per curiam). For the reasons below, and after applying the appropriate burden as clarified in *Baker*, Defendants' summary judgment motion once again will be granted.

## **JURISDICTION AND VENUE**

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), and supplemental jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367(a). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations to support both. *See* 28 U.S.C. § 1391.

---

[1] The Eleventh Circuit affirmed summary judgment as to the EPA claim for retaliation and as to the Title IX sex discrimination claim.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To demonstrate that a genuine dispute of material fact exists, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences from that evidence in favor of the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020).

## BACKGROUND

The underlying facts remain unchanged since the Court's October 30, 2023, order granting summary judgment to Defendants on all of Terrell's claims.

In July 2018, Alabama State University (ASU) sought to fill the position of Senior Associate Athletic Director for Internal Operations, a position that could be held by a male or female.  It budgeted and advertised a maximum annual salary of $75,000 for the position.  According to the vacancy announcement, the position reported to the Director of Intercollegiate Athletics, supervised the Director of Compliance, Compliance Coordinator, and other support staff, and assisted with supervising head coaches for assigned sports.

Then-ASU Athletic Director Jennifer Williams contacted Plaintiff Sha'ola Terrell about her interest in the position.  Terrell voiced her interest, applied for the position, and was offered it.  Terrell accepted the offer, knowing it paid $75,000, and began work on October 1, 2018.  As had been advertised, she earned an annual salary of $75,000.

From 2018 until she was terminated, Terrell also served as the Senior Woman Administrator (SWA) for ASU's athletic department, a National Collegiate Athletic Association (NCAA) designation that individual colleges or universities may use "to promote meaningful representation of women in the leadership and management of

college sports." (Doc. 27-7 at 1.) This role required her to attend various athletic conference and NCAA meetings, conferences, and events, complete reports, serve on conference committees, and create development and equity programming and plans. Terrell received no additional compensation for the SWA designation or the duties and responsibilities that came with it, although ASU had budgeted $15,000 for the designation.[2] In May 2021, Williams resigned effective July 16, 2021.

ASU hired Dr. Jason Cable as Athletic Director effective August 16, 2021. Once aboard, Dr. Cable restructured the athletics department. This included the elimination of the Senior Associate Athletic Director for Internal Operations position and the distribution of those duties to other positions; revision of the duties of the Deputy Director of Intercollegiate Athletics position held by Terrance Jones; and the creation of a new position titled "Senior Associate Athletic Director/Chief of Staff." Cable also recommended that Terrell and Jones be non-reappointed. ASU hired Jacqueline Freeman-Johnson (a female who previously reported to Terrell) to fill the new Senior Associate Athletic Director/Chief of Staff role.

On January 25, 2022, Terrell filed suit.

## DISCUSSION

The EPA prohibits wage discrimination on the basis of sex and "forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992); 29 U.S.C. § 206(d)(1). As recently clarified by the Eleventh Circuit in *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (per curiam), EPA claims are analyzed under a two-step framework.

Under the framework, to establish a prima facie case, a plaintiff must demonstrate "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. § 206(d)). After a plaintiff establishes a prima facie case, the burden then shifts to the employer to prove that the difference in pay is justified by one of the EPA's four exceptions: "(1) a seniority system; (2) a merit system; (3) a system which measures

[2] The record does not reveal whether this budgeted amount was intended to cover salary or expenses associated with the position such as travel expenses to many of the events that the position-holder had to attend.

earnings by quantity or quality of production; or (4) a differential based on any factor other than sex." *Baker*, 94 F.4th at 1317 (internal quotation marks omitted) (quoting *Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985)); *see also* 29 U.S.C. § 206(d)(1). The defendant bears the burden of proof for these exceptions because they constitute affirmative defenses. *Corning Glass Works*, 417 U.S. at 196–97; *Gosa v. Bryce Hosp.*, 780 F.2d 917, 918 (11th Cir. 1986) (per curiam).

CFEPA is the state-law equivalent to the EPA. It prohibits Alabama employers from "pay[ing] any of its employees at wage rates less than the rates paid to employees of another sex or race for equal work," unless "payment is made pursuant to" (1) "[a] seniority system"; (2) "[a] merit system"; (3) "[a] system that measures earnings by quantity or quality of production"; or (4) "[a] differential based on any factor other than sex or race." Ala. Code § 25-1-30(b). The Eleventh Circuit has concluded that "it is appropriate to analyze a CFEPA claim similarly to an EPA claim." *Williams v. Ala. State Univ.*, No. 23-12692, 2024 WL 5202087, at *4 (11th Cir. Dec. 23, 2024).

### A. Terrell's Prima Facie Case

Terrell claims Defendants violated the EPA and the CFEPA by paying her less than her male co-workers for equal or greater work. Terrell advances four comparators, but mainly focuses on Terrance Jones, then-Deputy Director of Intercollegiate Athletics. Terrell argues that wage discrimination occurred, in part, because Jones was paid $20,000 more than her.

ASU argues that Terrance Jones is not a proper comparator because Terrell and Jones held different positions and did not perform substantially similar work. ASU also asserts that Jones' position—Deputy Director of Intercollegiate Athletics—performed contract administration, a key difference compared with Terrell's position.

The Court agrees that Jones is not a sufficient comparator. First, Terrell held a different position from Jones. Terrell served as the Senior Associate Athletic Director of Internal Operations while Jones served as the Deputy Director of Intercollegiate Athletics. Even though both positions required the same qualifications—a master's degree, at least five years of relevant intercollegiate athletics experience, demonstrated knowledge of the operation of intercollegiate athletics programs, and a flexible work schedule—they are different positions.

4

Second, the two positions performed different duties. As the Deputy Director of Intercollegiate Athletics, Jones' job responsibilities included the following: planning, implementation, administration, direction, and supervision of the Athletic Department; providing daily operations management over the athletic programs and projects, including administrative support for coaching staff; assisting in managing the day-to-day operations of the Division of Athletics (Division) in contract negotiations; reviewing all contracts concerning the Division; supervising coaching staff and overseeing sports programs; representing ASU at institutional, conference, and NCAA meetings; and serving on both the internal and external committees.

While as the Senior Associate Athletic Director of Internal Operations, Terrell's position reported to the Director of Intercollegiate Athletics and required her to supervise the Director of Compliance, the Compliance Coordinator, and other support staff; assist with supervising head coaches for assigned sports; evaluate ASU's efforts to maintain institutional control of the athletic program; make appropriate recommendations to the Director and Deputy Director of Intercollegiate Athletics regarding NCAA governance matters as well as NCAA, Southwestern Athletic Conference, and institutional policies and legislation; oversee the day-to-day operations of the compliance, athletic academic advising, sports medicine, and strength and conditioning departments; serve as liaison for all eligibility functions and processes including the eligibility certification process; and serve "as an athletic contact for Authorized Eligibility Signature in the office of the Deans, Registrar, and Financial Aid, and perform other duties as assigned." (Doc. 23-21.) Also, Terrell served as ASU's SWA, a role for which ASU budgeted $15,000 but for which she did not receive compensation.

Given the different job positions and the responsibilities attendant to each, the Court finds that Terrell has failed to satisfy "the heavy burden of proving 'substantial identity of job functions'" between her and Jones. *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (citation omitted). It is true that Jones received a higher salary and shared some similar responsibilities compared with Terrell. These responsibilities included supervising other individuals, representing ASU's athletic department, and engaging in managerial and supervisory responsibilities within the athletic department. Even so, broad similarities between a fraction of the comparator's job and plaintiff's job are inadequate. ASU's Deputy Director of Intercollegiate Athletics position held broader and different managerial and supervisory responsibilities compared with the Senior Associate Athletic Director of Internal Operations position. Ultimately, Terrell fails to sufficiently show that her position as Senior Associate Athletic Director of Internal Operations required equal skill, effort, and responsibility to

5

perform as Jones who held the position of Deputy Director of Intercollege Athletics. *See Miranda*, 975 F.3d at 1533.

As for the argument that Terrell had more responsibilities than Jones because of the SWA designation, the SWA designation only further distances Jones as a proper comparator. None of the evidence suggests that Jones had a similar designation.

As a result, Jones is not a proper comparator for purposes of establishing a prima facie case for wage discrimination under the EPA and CFEPA.

To a much lesser extent, Terrell advances Lonnie Brown, Ronald Brown, and Derrick Magee as comparators. They are not.

First, as to Lonnie Brown, Terrell admits that ASU paid Brown $75,000 annually—the same salary as Terrell—and "had far less work and responsibilities." (Doc. 25-1 at 12.) As such, Terrell has not shown that ASU paid Lonnie Brown more for equal work, and she has conceded their respective jobs did not require equal skill, effort, and responsibility under similar working conditions. Working less for the same pay does not make an individual an appropriate comparator. *See Blackman v. Fla. Dep't of Bus. & Pro. Regul.*, 599 F. App'x 907, 910 (11th Cir. 2015) (per curiam) (concluding that a male was not an appropriate comparator for a female plaintiff because of dissimilarity in job responsibilities, even though the male comparator was her subordinate, was paid more, and worked less). Accordingly, Lonnie Brown is not an appropriate comparator.

Second, as for Ronald Brown, Terrell makes similar concessions as she does with Lonnie Brown. Specifically, she concedes that Ronald Brown reported to Terrell and "had far less work and responsibilities." (Doc. 25-1 at 12.) Although ASU paid Ronald Brown a higher salary,[3] Terrell again concedes their respective jobs did not require equal skill, effort, and responsibility under similar working conditions. Therefore, Ronald Brown is also not an appropriate comparator.

Third and finally, Terrell states that Derrick Magee earned a salary of $75,000 and "had far less responsibilities than [her] position" while she "had significantly

---

[3] According to ASU, Brown received a higher salary than Terrell because a "reversion was not made by payroll[,] and Brown continued to receive the Assistant Vice President salary after February 6, 2015[,] until his non-reappointment from the University." (Doc. 44 at 6 n.2) (citation omitted).)

more responsibilities" compared to Magee.  (Doc. 25-1 at 12–13.)  Here again, Terrell fails to show that ASU paid Magee more for equal work, and she concedes that their jobs did not require equal skill, effort, and responsibility under similar working conditions.  (Doc. 46 at 2.)  Magee is not an appropriate comparator.

Terrell failed to establish that ASU paid different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. Terrell therefore has failed to make out a prima facie case for wage discrimination on the basis of sex under either the EPA or CFEPA.  As a result, ASU's motion for summary judgment is due to be granted as to these two claims.

### B. ASU's Affirmative Defense

Even if Terrell had made a prima facie case for wage discrimination under both the EPA and CFEPA, ASU is still due summary judgment because of ASU's affirmative defense—it relied on a "factor other than sex" in determining Terrell's salary.  *Baker*, 94 F.4th at 1317 (internal quotation marks omitted) (quoting *Brock v. Ga. Sw. Coll.*, 765 F.2d at 1036).  Specifically, ASU argues that Terrell's salary was not based upon gender because "the salary was pre-determined and advertised based upon ASU's budget."  (Doc. 44 at 7.)  That is, the position was budgeted and advertised at $75,000, that males and females equally could apply for it, and that Terrell applied for and accepted the position knowing that it paid $75,000 annually.

The "any factor other than sex" affirmative defense to a wage discrimination claim under the EPA is a "broad" and "catch-all exception."  *Corning Glass Works*, 417 U.S. at 198, 204.  Factors "other than sex" include (1) "unique characteristics of the same job;" (2) "an individual's experience, training, or ability;" or (3) "special exigent circumstances connected with the business."  *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir. 1988).  "So long as subjective business justifications . . . are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered."  *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam) (citation omitted).

The Court finds that ASU has sufficiently met the "any factor other than sex" affirmative defense, a defense for which it bears the burden of proof.  *Corning Glass Works*, 417 U.S. at 196–97.  ASU's business justifications "are not overly subjective," *Schwartz*, 954 F.2d at 623, because Terrell's salary was pre-determined (before Terrell even applied for it) and budgeted, was publicly advertised for any prospective applicant to see—males and females alike—and Terrell applied for and

accepted the position knowing that it paid only $75,000.[4] In fact, two of Terrell's proposed male comparators—Brown and Magee—also held positions paying the same pre-determined, budged salary amount of $75,000. As such, ASU is also entitled to summary judgment on Terrell's wage discrimination claims under the EPA and CFEPA because it has sufficiently met the "any factor other than sex" affirmative defense. *Baker*, 94 F.4th at 1317 (internal quotation marks omitted) (quoting *Brock v. Ga. Sw. Coll.*, 765 F.2d at 1036).

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)  The *Motion for Summary Judgment* (doc. 21), as applicable to Counts One and Two, is due to be and is hereby **GRANTED**.

(2)  Plaintiff Sha'ola Terrell's wage discrimination claims under the Equal Pay Act (EPA), 29 U.S.C. § 206(d), and the Clarke-Figures Equal Pay Act (CFEPA), Ala. Code § 25-1-30, are **DISMISSED WITH PREJUDICE**.

(3)  A separate judgment will issue.

DONE, on this the 16th day of June 2025.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[4] As for the SWA designation, any more money that may be owed as part of the designation relates to Terrell's prima facie case for wage discrimination. As discussed above, there is no indication in the record Jones received any similar designation.